Filed 11/26/25  In re Jamar J. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re Jamar J., A Person Coming Under the Juvenile Court Law. | B342821 (Los Angeles County Super. Ct. No. 20CCJP02063H) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ashley M. Price, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.    INTRODUCTION

A.G. (mother) appeals from the juvenile court's orders sustaining a Welfare and Institutions Code section 300[1] petition, declaring Jamar J. (the child) a dependent of the court and ordering him removed from his parents.[2]  Mother does not challenge the merits of the court's orders.  Instead, she contends the Department of Children and Family Services (Department) and the court failed to comply with their inquiry duties under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Cal-ICWA; § 224 et seq.).  We affirm.

## II.    BACKGROUND

Mother and father are the parents of five children, four of whom were the subject of another dependency case before the birth of the child.  During that prior case, the Department made

---

[1]    Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    I.J. (father) is not a party to this appeal.

2

inquiries of mother, father, maternal grandmother, and maternal great-aunt Kelly J. (who is also referred to in the record as Kelly G.) about possible Indian ancestry and those family members denied any such ancestry.

On July 16, 2024, the Department filed a section 300 petition with respect to the then one-year-old child. In an addendum report filed on July 16, 2024, the Department explained that it had asked mother, paternal aunt T.R., and maternal great-aunt Kelly J. about their Indian ancestry and each had denied any such ancestry.

On July 17, 2024, mother filed a Parental Notification of Indian Status (ICWA-020) form stating she had no Indian ancestry. On the same day, the juvenile court held a hearing at which mother was present. The court acknowledged mother's indication of no Indian ancestry and asked mother if father had any such ancestry. Mother replied, "I don't think so. No." The court found it did not have reason to know the child was an Indian child. The court ordered the Department to "interview any and all known relatives regarding ICWA and to give an update in the jurisdiction report. [The Department] has an ongoing duty to inquire of all relatives and case participants about possible Native American Heritage throughout the life of this case."

On August 22, 2024, the Department filed a first amended section 300 petition. In its August 22, 2024, jurisdiction and disposition report, the Department reported the details of its ICWA investigation. The Department explained that it had received denials of Indian ancestry from the following nine family members: mother, father, maternal great-aunt Kelly J., maternal great-uncle T.J., maternal great-aunt D.O., maternal

3

grandmother L.D., paternal aunt T.R., paternal uncle J.J., and paternal grandmother Tracey R. (who is also referred to in the record as Tracey G.). The Department contacted the maternal grandfather, M.G. Sr., on May 14, 2024, but received no response.

At his September 3, 2024, arraignment hearing, father told the juvenile court that he was not aware of any Indian ancestry within his family. This was consistent with what he had told the court in a prior dependency case in June 2022, and told a social worker in August 2024. The court made an updated finding of "no ICWA" in this case.

On December 3, 2024, at the continued jurisdiction and disposition hearing, the juvenile court declared the child a dependent of the court and ordered him removed from the parents. The court determined the child should remain in his existing placement with maternal great-aunt D.O. The court ordered family reunification services for mother, bypassed services for father, and ordered monitored visits for the parents. The court set a six-month review hearing for June 3, 2025, and a section 366.26 hearing for March 18, 2025.

Mother timely filed a notice of appeal.

## III.   DISCUSSION

A.   *Legal Principles: ICWA and the Duties of Inquiry*

"The California Supreme Court recently addressed 'whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error.' (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125.) It 'conclude[d] a judgment must be

conditionally reversed when error results in an inadequate ICWA inquiry.' (*In re Kenneth D.*[ (2024)] 16 Cal.5th [1087,] 1094; see *In re Dezi C.,* [*supra*, 16 Cal.5th] at p. 1125.) [¶] . . . [¶]

"The Department's duty of '[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (Former § 224.2, subd. (b)[3]; see [Cal. Rules of Court,] rule 5.481(a)(1) [the

---

[3]     The current version of section 224.2, subdivision (b) provides:

"(1) The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1. At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child.

"(2) If a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, or if they were initially taken into protective custody pursuant to a warrant described in Section 340, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child,

5

Department 'must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child']; *In re Y.W.*[ (2021)] 70 Cal.App.5th [542,] 551–552.)

"ICWA and Cal-ICWA define 'extended family member,' if not separately defined by the law or custom of the Indian child's tribe, as 'a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); see § 224.1, subd. (c) [providing 'extended family member' follows definition stated in ICWA].)" (*In re T.R.* (2024) 107 Cal.App.5th 206, 218–219.)

"The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).)" (*In re Dezi C., supra*, 16 Cal.5th at p. 1134.) We will "review[] for substantial evidence whether there is reason to know a minor is an Indian child, and review[] a finding of due diligence and proper inquiry for abuse of discretion." (*In re Kenneth D., supra*, 16 Cal.5th at p. 1101; but see *ibid.* ["some courts have applied a standard substantial evidence test, 'which requires us to determine if reasonable, credible evidence of solid value supports the court's' ICWA finding"].)

---

parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (See Stats. 2024, ch. 656, § 3, eff. Sept. 27, 2024.)

"[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] "'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law ([Cal. Rules of Court, ]rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*In re Dezi C., supra*, 16 Cal.5th at p. 1141.)

B.    *Analysis*

Mother contends the Department and the juvenile court failed to comply with their continuing duty of inquiry under ICWA and Cal-ICWA. According to mother, the Department unreasonably failed to ask the following relatives about the child's possible Indian ancestry: maternal great-aunt Kelly G., an unidentified maternal great-grandmother; maternal uncle M.G., paternal uncle D., paternal grandfather, and paternal grandmother (both of whom mother describes as "unidentified").

7

As an initial matter, and contrary to mother's assertions, the Department *did* ask paternal grandmother Tracey R. and maternal great-aunt Kelly G. about the child's Indian ancestry. They denied any such ancestry. Further, the Department could not have asked paternal grandfather about Indian ancestry because he was deceased.[4]

We next consider mother's complaint that the Department failed to contact and then ask the following relatives about Indian ancestry: a maternal great-grandmother; maternal uncle M.G.; and paternal uncle D. In support of her contention that the Department failed to interview these relatives, mother cites to the reporter's transcript from the July 29, 2024, hearing, at which none of the relatives appeared but the court and the parties made reference to these family members during a discussion about the child's placement and monitored visits. We reject mother's contention that the Department was required to locate and interview these relatives. A great-grandmother does not fall within the definition of "extended family" and thus the Department was not required to interview her. (§ 224.1, subd. (c)(1); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053). Further, on this record, where the Department had inquired of nine other family members, five maternal and four paternal, about the child's Indian ancestry, the Department was not additionally required to obtain contact information for and interview a

---

[4]    In support of her contention that the Department failed to interview paternal grandfather, mother cites to a reporter's transcript from a September 3, 2024, hearing at which the parties discuss father's paternity and a pending DNA test of paternal grandmother. That portion of the transcript does not refer to a paternal grandfather.

8

maternal uncle and a paternal uncle in order to fulfill its duty of initial inquiry. (*In re D.S., supra*, 46 Cal.App.5th at p. 1053 [the Department "is not required to 'cast about' for information or pursue unproductive investigative leads"].)[5]

Mother also contends that if we conclude that the Department made an adequate initial ICWA inquiry, "then [the Department] failed to report fully on its initial inquiry, as required, because inquiry with the identified extended families was not completely listed in [the Department's] reports . . . ." We reject the contention. As we explain above, the Department's reports included descriptions of the Department's ICWA inquiry.

We conclude that substantial evidence supports the juvenile court's finding that ICWA does not apply in this case.

---

[5]     For the same reason, we reject mother's related contention that the Department was required to ask mother, father, and any other extended family members "whether they could provide contact information for any other maternal or paternal extended family members, so that the social worker could inquire about whether [the child] may have Native American heritage."

## IV.   DISPOSITION

The juvenile court's December 3, 2024, jurisdiction and removal orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.